IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 02-cv-00651-RPM

MARK SHOOK and
DENNIS JONES, on behalf of themselves and all others similarly situated,

    Plaintiffs, and

JAMES VAUGHAN,
SHIRLEN MOSBY,
THOMAS REINIG,
LOTTIE ELLIOTT, and

VICTOR SIEGRIST,

    Intervenor Plaintiffs,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EL PASO and
TERRY MAKETA, in his official capacity as Sheriff of El Paso County,

    Defendants.

---

## ORDER DENYING CLASS CERTIFICATION

---

   In the five complaints filed in this action, the original plaintiffs and intervening plaintiffs ("plaintiffs") have alleged sufficient facts to support their claims that the protection against cruel and unusual punishment granted to them by the Eighth Amendment to the United States Constitution, made applicable to state and local governments by the Fourteenth Amendment, was violated by acts and omissions of employees and agents of the Sheriff of El Paso County, Colorado while the plaintiffs were inmates housed in the El Paso County Jail.  More particularly,

-1-

the allegations identify each of these plaintiffs as persons with serious mental health needs which were not met, resulting in harm to them.  They do not seek damages for such harm; they ask only for declaratory and injunctive relief on behalf of a class, comprising "all persons with serious mental health needs who are now, or in the future will be, confined in the El Paso County Jail," or alternatively, "all persons who are now, or in the future will be, confined in the El Paso County Jail."

The motion for certification of a class under Fed. R. Civ. P. 23(b)(2), filed June 17, 2005, is opposed by the defendants and the issues have been adequately briefed.  The motion is denied because the plaintiffs have not met the requirements of Rule 23(a)(2) and (3).  The questions of law or fact are not sufficiently common to either of the classes for which certification is sought and the claims and defenses are not typical of either class as identified.  Additionally, the plaintiffs have not shown that the defendants have acted or refused to act on grounds generally applicable to either of the putative classes in a manner that would make appropriate the broad injunctive relief or corresponding declaratory relief requested as necessary to support certification under Rule 23(b)(2).

The Jail houses recent arrestees, persons awaiting trial, and persons convicted and sentenced to terms of two years or less.  The Jail comprises two buildings, both located in Colorado Springs – the Criminal Justice Center and the Metro Detention Center.  The five complaints[1] allege the following facts in support of the plaintiffs' individual claims:  Plaintiff Mark

[1]The five complaints are (1) the class action complaint of plaintiffs Mark Shook and Dennis Jones, filed on April 2, 2002, (2) the complaint in intervention of James Vaughan and Shirlen Mosby; (3) the plaintiffs' supplemental class action complaint; (4) the complaint in intervention of Thomas Reinig and Lottie Elliott, and (5) the complaint in intervention of Victor Siegrist.  James Robillard, one of the original plaintiffs, moved to withdraw and was dismissed

Shook asserts that he suffers from a form of autism known as Asperberger's Syndrome, as well as bipolar disorder.  He alleges that before his arrival at the Jail in fall 2001, he regularly took two anti-psychotic drugs prescribed by his psychiatrist.  He complains that after he arrived at the Jail he had no access to any medications, and when after three weeks he finally did see a doctor, the doctor would not prescribe his regular medications because they were not on the Jail's list of approved medications.

Plaintiff Dennis Jones states that he has been diagnosed as bipolar and suffers from depression, anxiety, and suicidal thoughts.  He asserts that before he entered the Jail in September 2001, he was prescribed two drugs to control his symptoms.  Mr. Jones complains that after he was confined, Jail officials denied him access to any medications for nearly a month.  He alleges that when he finally obtained a prescription, he received only one of the drugs he needed and the dosage was insufficient to provide relief for his symptoms.  In addition, he complains that the Jail staff who monitored the levels of his medication took blood samples too soon or too long after he received his medication for the tests to be accurate.

Plaintiff-intervenor Shirlen Mosby states that she is bipolar and has experienced numerous attacks of anxiety, depression, feelings of hopelessness, and suicidal thoughts.  She alleges that during her confinement, Jail officials improperly placed her in special detention cells and belittled her condition.  She also alleges that she was able to attempt suicide three times because of inadequate supervision at the Jail.

Plaintiff-intervenor James Vaughan asserts that he is bipolar and suffers from nearly continuous conditions of depression, anxiety, and "racing thoughts."  He claims that he was

from this action on December 3, 2002.

deprived of any medication for many days after he arrived at the Jail as a pretrial detainee, and that he had inadequate access to psychiatric care while there.  In addition, he complains that he did not receive the blood tests necessary to monitor the anti-depressant medication he required.

Plaintiff-intervenor Thomas Reinig alleges that he has a history of psychiatric hospitalizations and diagnoses dating to the early 1990s, and has been diagnosed with schizoaffective disorder and paranoid schizophrenia.  His was incarcerated in the Jail as a pretrial detainee in September 2003, and for a period between March and June 2004 was sent to the state psychiatric hospital in Pueblo, Colorado.  At the Jail he was prescribed a variety of psychiatric medications and listed as a potential suicide risk.  Mr. Reinig complains of having been confined eight times in a toiletless special detention cell, sometimes while restrained with handcuffs and leg irons.  He also complains that several times Jail staff subjected him to shocks from a taser and threatened him with the use of the taser on additional occasions.  In addition, he alleges that Jail authorities have strapped him into the Jail's restraint chair, and on other occasions have threatened the use of the restraint chair.[2]

Plaintiff-intervenor Lottie Elliott states that she arrived at the Jail on November 18, 2004, after having spent three days on the psychiatric ward of St. Francis Hospital after a suicide attempt on November 15, 2004.  She alleges that she was released to the Jail with a prescription written by the hospital psychiatrist for the administration of an anti-psychotic medication.  She complains that the Jail's medical staff changed her medications without consulting her or warning her of possible side effects of the new drugs.  After she complained for several days, Jail staff

---

[2]Mr. Reinig is the prisoner identified as "Prisoner No. 13" in the Supplemental Complaint. (¶¶ 37-38).

permitted her family to pick up the previously-written prescription form from her property, fill it at a community drugstore, and bring the medications to the Jail.  She alleges that ten days passed before she began receiving the medications prescribed by the hospital psychiatrist, and the dosage administered by Jail staff was inadequate.  Ms. Elliott alleges that her requests for additional medication were unanswered until she met with the Jail's psychiatrist and by then she had been incarcerated for approximately four weeks and had attempted suicide.[3]

Plaintiff-intervenor Victor Siegrist alleges that he suffers from schizoaffective paranoid disorder (bipolar type) and seizures.  His complaint states that he has been confined in the Jail since April 27, 2005, except for periods when he was in Memorial Hospital and in the Colorado Mental Health Institute at Pueblo for reasons related to this mental health problems.  He alleges that during his confinement at the Jail he was deprived of necessary medications.  He also alleges that he was held for periods of time in cells having no sink or toilet.  He complains of being forced to attend court appearances in a humiliating suicide gown and of being subjected to shocks from a taser.  In addition, he alleges that the defendants failed to protect him adequately from the risk of self-harm.  He asserts that at the Mental Health Institute at Pueblo, he received medications that stabilized his condition, but upon his return to the Jail, his medication was changed without his having been examined by a doctor.  He maintains that he observed and experienced inadequate mental health staffing at the Jail.

The complaint and supplemental complaint describe various incidents that occurred at the Jail between 1999 and 2005 involving persons identified as "Prisoners 1-14."  The plaintiffs allege

---

[3]Ms. Elliott is the prisoner identified in the supplemental complaint as "Prisoner No. 7." (¶¶ 22-23).

that those incidents show administrative deficiencies, such as inadequate staffing and training, that increase the risk of mental and physical harm to mentally ill inmates, including the risk of self-harm.

The plaintiffs seek an order enjoining the defendants to:

- provide sufficient numbers of mental health and custody staff, with adequate training, to provide for the serious mental health needs of class members;

- provide safe and appropriate housing for prisoners with serious mental health needs;

- discontinue use of the "special detention cells" to house prisoners exhibiting signs of mental illness;

- provide inpatient psychiatric care for prisoners whose serious mental health needs require it;

- cease using restraints, pepper spray, and electroshock weapons ("tasers") against prisoners exhibiting signs of mental illness in circumstances that pose a substantial risk of serious harm to such prisoners;

- implement an adequate system to provide appropriate medication to prisoners whose serious mental health needs require it and to monitor the effects of that medication; and

- provide adequate screening and precautions to prevent self-harm and suicide.

(Supplemental Compl. ¶ 68).

The plaintiffs seek to represent the proposed class, and they bear the burden of proving that the requirements of Rule 23 are satisfied. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.

1988).  To determine whether this action should proceed as a class action, the court must first

determine whether the four threshold requirements of Rule 23(a) are met.  *Adamson v. Bowen*,

855 F.2d 668, 675 (10th Cir. 1998).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If those requirements are met, "[the court] must then examine whether the action falls within one

of the three categories of suits set forth in Rule 23(b)."  *Adamson,* 855 F.2d at 675.  Plaintiffs

seek certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has

acted or refused to act on grounds generally applicable to the class as a whole."

There is no need to identify those who are or may become members of a class for

certification under Rule 23(b)(2), which does not require notification, but there must be a

sufficient definition to develop the contours for identifying the issues sought to be adjudicated and

determine whether those issues are within the court's jurisdictional and institutional competence

to grant the relief requested.

The plaintiffs' claims are sufficient to state a claim for damages under 42 U.S.C. § 1983

making officials liable for constitutional violations caused by them.  They do not request damages.

Injunctive relief is a recognized form of equitable relief under that statute.  The form of the

injunction must comply with the requirements of Rule 65(d), as follows:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents,

servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed. R. Civ. P. 65(d).  The plaintiffs recognize that limitation and allege that class certification is necessary because the plaintiffs are no longer in the Jail facilities and their individual exposure to the claimed violations is not likely to reoccur.  They contend that if future violations are to be prevented, the court must enter its orders under Rule 23(b)(2).

There are three flaws in the class approach to the claims sought to be adjudicated in this civil action.  First, the inherent complexities in determining what persons present a need for treatment of mental disorders while confined.  Second, the limitations on this court's ability to adjudicate the factual and legal issues in a manageable way.  Third, the inability of the court to fashion the remedy requested, given the requirements of Rule 65(d) and the jurisdictional limitations imposed by the Prison Litigation Reform Act ("PLRA") in 18 U.S.C. § 3626.

That statute did not alter or amend Rule 23 but it did restrict the court's ability to provide equitable relief of the kind requested in this case.  Accepting that there may be prospective relief for the benefit of a class of persons beyond the named plaintiffs, the restriction clearly stated is that the order must be narrowly drawn and "extend no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

The plaintiffs candidly state that their purpose in pursuing this class action is to determine the "scope of prisoner's constitutional rights to mental health services" and identify it as the legal question that is common to the entire class of "Jail prisoners with serious mental health needs." That statement misapprehends the established law.  Implicit in that statement is the assumption

that the Constitution affirmatively creates a right to mental health services or treatment. It does not. The Constitution prohibits denial of treatment for medical needs, including mental health needs, of which jail officials are aware.

The interest protected by the Eighth Amendment is highly individualistic and case specific in character. Broadly stated, the courts have interpreted its prohibition of cruel and inhuman punishment to equate the failure to provide medical treatment for serious medical needs of prisoners with such punishment, if that failure results from a deliberate indifference on the part of the prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Proof of a violation of this protection requires a showing that the prisoner has some particular need for medical treatment that is "serious" and that the prison officials were deliberately indifferent to it. *Id.*; *see also Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996) "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle*, 83 F.3d at 1202 (internal quotations and citations omitted).

Deliberate indifference is more than the failure to provide that attention. There must be a showing that the officials have knowledge that the prisoner has a condition requiring special treatment or care and, with such knowledge, disregard it resulting in excessive risk to the prisoner's health. In an action for damages, the plaintiff must show actual physical injury resulting from – that is caused by – the failure of care. If treatment is provided but it is below the relevant standard of care, there is no constitutional claim. Deliberate indifference is more than negligence. A claim for relief under §1983 is based on the Constitutional violation, not the law of torts. Under the PLRA, there is no justiciable claim if there is no physical injury. "No Federal civil

action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

To proceed with the plaintiff's claims in this case would require an expansion of this well established law to interpret the Eighth Amendment as mandating prison officials to take affirmative action to prevent or protect against the possibility of an occurrence of a violation in the future. When determining whether an action should proceed as a class action, the court should refrain from evaluating the merits of the plaintiffs' claims, *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982), but the court may consider whether the plaintiffs' definition of the class and their statement of the common legal questions differ from established law. Furthermore, the court may consider the nature of the plaintiffs' claims and how the proof or defense of such claims relates to the standards of Rule 23.

Medical needs in the physical sense are more identifiable than those arising from mental or emotional conditions because medical needs in the physical sense are largely identifiable objectively. In contrast, mental disorders are more difficult to categorize, and indeed the term "mental disorder" is not subject to precise boundaries. The Manual of the American Psychiatric Association states, "although this manual provides a classification of mental disorders, it must be admitted that no definition adequately specifies precise boundaries for the concept of 'mental disorder.'" American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, xxi (4th ed. 1994) ("DSM-IV"). The American Psychiatric Association recognizes that its descriptions of behaviors and symptoms that categorize various mental disorders classify disorders, not classes of people. The DSM-IV states, "A common misconception is that a

classification of mental disorders classifies people, when actually what are being classified are disorders that people have."  DSM-IV at xxii.  That Manual specifically avoids using classifications of mental disorders to refer to classes of people, emphasizing instead the individual nature of mental disorders.  *See id*.  That reference work further cautions that its descriptions of behaviors characterizing various mental disorders "may not be wholly relevant to legal judgments . . . ."  DSM-IV at xxvii.

The terminology used by the plaintiffs in their pleadings does not match the language of the DSM-IV.  Most of the named plaintiffs are identified as having some form of Bipolar Disorder.  That is but one of the 16 major diagnostic classes in the Manual and it is subclassified into 4 types of disorders (Bipolar I Disorder, Bipolar II Disorder, Cyclothymia, and Bipolar Disorder Not Otherwise Specified) with separate criteria sets.  *See* DSM-IV at 350-66.  Consider the complexity of this description of the Diagnostic Features of Bipolar I Disorder:

> There are six separate criteria sets for Bipolar I Disorder: Single Manic Episode, Most Recent Episode Hypomanic, Most Recent Episode Manic, Most Recent Episode Mixed, Most Recent Episode Depressed, and Most Recent Episode Unspecified. Bipolar Disorder I, Single Manic Episode, is used to describe individuals who are having a first episode of mania.  The remaining criteria sets are used to specify the nature of the current (or most recent) episode in individuals who have had recurrent mood episodes.

> The essential feature of Bipolar I Disorder is a clinical course that is characterized by the occurrence of one or more Manic Episodes . . . or Mixed Episodes . . . .  Often individuals have also had one or more major Depressive Episodes . . . . Episodes of Substance-Induced Mood Disorder (due to the direct effects of a medication, other somatic treatments for depression, a drug of abuse or toxin exposure) or of Mood Disorder Due to a General Medical Condition do not count toward a diagnosis of Bipolar I Disorder.  In addition, the episodes are not better accounted for by a Schizoaffective Disorder and are not superimposed on Schizophrenia, Schizophreniform Disorder, Delusional Disorder, or Psychotic Disorder Not Otherwise Specified.  Bipolar I Disorder is subclassifed in the fourth digit of the code according to whether the individual is experiencing the first episode (i.e., Single

-11-

> Manic Episode) or whether the disorder is recurrent.  Recurrence is indicated by
> either a shift in the polarity of the episode or an interval between episodes of at least
> 2 months without manic symptoms.  A shift in the polarity is defined as a clinical
> course in which a Major Depressive Episode evolves into a Manic Episode or a Mixed
> Episode or in which a Manic Episode or a Mixed Episode evolves into a Major
> Depressive Episode.  In contrast, a Hypomanic Episode that evolves into a Manic
> Episode or a Mixed Episode, or a Manic Episode that evolves into a Mixed Episode
> (or vice versa), is considered to be only a single episode.  For recurrent Bipolar I
> Disorders, the nature of the current (or most recent) episode can be specified (Most
> Recent Episode Hypomanic, Most Recent Episode Manic, Most Recent Episode
> Mixed, Most Recent Episode Depressed, Most Recent Episode Unspecified).

DSM-IV at 350-51.  Manic, mixed, or major depressive episodes may range from mild to severe.

*Id.* at 351.  According to the DSM-IV, the majority of individuals with Bipolar I Disorder return

to a fully functional level between episodes.  *Id.* at 352.

Although not specifically mentioned in Rule 23, a prerequisite of a class action is that

there must be a class.  7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal*

*Practice & Procedure* § 1760 (3d ed. 2005).  While it is true that notice to members of a Rule

23(b)(2) class is not required, every Rule 23 class must have a defined boundary.  Certification of

a nebulous class would result in numerous procedural problems.  Compliance with class-wide

injunctive relief would be impossible to monitor, if it would even be possible to enter an order

meeting the requirements of Rule 65(d).  In addition, certification of a vaguely defined class

would lead to uncertainty about the preclusive effect of the action.

The plaintiffs seek certification of a class comprised of "all persons with *serious mental*

*health needs*, who are now, or in the future will be, confined in the El Paso County Jail," but the

term "serious mental health needs" is vague.  The plaintiffs have not offered any definition of that

term.  There are many varieties and degrees of mental disorders, and those who operate Jails are

not required to offer treatment or alter their custody procedures for every psychological problem

exhibited by prisoners. *See, e.g., Riddle*, 83 F.3d at 1204 (plaintiffs who claimed that prison lacked adequate treatment for prisoners suffering from deviant sexual compulsions failed to satisfy the *Estelle* requirement of showing "serious medical need").

As discussed above, "serious medical need" has been defined as a condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would recognize it as needing medical attention, but that standard is of little use in defining the class in this action. The Constitution does not require that each Jail inmate receive an extensive mental health evaluation by a physician or mental health professional at the time of intake. Whether an inmate is obviously suffering from a serious medical condition due to a mental disorder depends on the events and circumstances giving rise to that prisoner's claim of deliberate indifference. "All persons with *serious mental health needs* who are now, or in the future will be, confined in the El Paso County Jail" is a group that is too amorphous to proceed as a class, even one under Rule 23(b)(2).

The plaintiffs have proposed an alternative class defined as "all persons who are now, or in the future will be, confined in the El Paso County Jail." The fact that the plaintiffs have proposed an alternative class definition suggests that they foresee the procedural problems that will inevitably result if the class were to be defined as "all persons with serious mental health needs, who are now, or in the future will be, confined in the El Paso County Jail." The plaintiffs' alternative class definition, however, is too broad. There are no allegations that the defendants' actions or inactions violate the Eighth Amendment rights of every Jail inmate. The plaintiffs do not claim, for example, that the use of a taser or pepper spray to subdue a prisoner constitutes cruel and unusual punishment in every instance, their complaint is about the use of such devices to

restrain prisoners who suffer from severe mental illness.  The issue is then whether the proposed

class of "all persons with serious mental health needs who are now, or in the future will be,

confined in the El Paso County Jail" meets the requirements of Rule 23.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

impracticable.  The plaintiffs allege that the El Paso County Jail regularly houses 1,000 inmates or

more, and its population has been as high as 1,312.  The plaintiffs cite national statistics showing

that approximately 20% of jail prisoners have some kind of mental illness.  They assert that this

statistic shows that Rule 23(a)(1)'s numerosity requirement is met.  Their proposed class,

however, is comprised of those with *serious* mental health needs.  That group is not defined.  The

plaintiffs instead emphasize "impracticability," arguing that the fluid nature of a Jail population

renders individual claims impracticable.  The plaintiffs assert that "unless a class is certified, the

conditions under which mentally ill and suicidal prisoners are confined at the El Paso County Jail

are effectively immunized from judicial review."  The public records of this court contradict that

assertion.  Conditions at the El Paso County Jail have been and are the subject of individual

actions.[4]   The question is whether the plaintiffs have satisfied all of the requirements of Rule 23.

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  This

prerequisite is met if there is single issue of law or fact common to the class.  *J.B. ex rel. Hart v.

Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).  Certification under Rule 23(b)(2) of a claim

---

[4]The supplemental complaint includes allegations regarding the suicides of Jail prisoners
Brian Bennett and Marca Wilson.  Civil Action No. 03-cv-00492-RPM, an action for damages
against the Board of County Commissioners of El Paso County and others arising out of the death
of Brian Bennett was dismissed based on stipulations submitted on March 17, 2004 and April 27,
2004.  Civil Action No. 03-cv-01919-RPM, an action for damages brought by the statutory heir
of Marca Wilson against the Board of County Commissioners of El Paso County and others is
pending in this court.

seeking the application of a common policy is not precluded merely because the claims of

individual class members differ factually, but when the claims of the named plaintiffs arise from

diverse factual situations and the remedies they seek are based on diverse legal theories,

commonality is lacking.  *See Hart*, 186 F.3d at 1288-90.

The facts common to the class are that the plaintiffs and putative class members suffer

from mental illness and were confined in the El Paso County Jail.  Other than those common

features, the circumstances giving rise to the class members' claims vary greatly.  These

differences are significant because the facts relevant to the determination of whether an Eighth

Amendment violation occurred varies depending on the type of violation alleged.  Plaintiff Reinig,

for example, complains of being shocked by a taser.  Determination of this complaint would

require inquiry into whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously or sadistically to cause harm.  *See Hudson v. McMillian*, 503 U.S. 1, 6-7

(1992); *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).  Plaintiff Mosby complains of

being held in a toiletless special detention cell.  A claim of that type requires evaluation of the

duration and severity of the alleged deprivation.  *See Craig v. Eberly,* 164 F.3d 490, 495 (10th

Cir. 1998).  Lottie Elliott alleges that she was able to attempt suicide several times.  A claim for

failure to protect against the risk of self-harm involves factual issues about the prison official's

knowledge of the inmate's mental condition and the care and security provided to the inmate.  *See*

*Barrie v. Grand County, Utah*, 119 F.3d 862, 864 (10th Cir. 1997).  Evaluation of the claims

asserted on behalf of the class would require examination of the unique circumstances

surrounding each incident alleged to constitute a constitutional deprivation.

The proposed class suffers from the same deficiency as the proposed class in *Hart*.  In that case, the United States Court of Appeals for the Tenth Circuit Court of Appeals stated, "Other than all being disabled in some way and having had some sort of contact with New Mexico's child welfare system, no common factual link joins these plaintiffs."  186 F.3d at 1289.  Similarly, in this action, there is no single question of fact common to the class.

Rule 23(a)(2)'s commonality requirement may also be met by showing a common question of law, but commonality requires more than that the claims of class members be bound by a broad legal theme.  Rule 23(a)(2) is not satisfied by generalized allegations of policy failures or systemic deficiencies.  *See Hart*, 186 F.3d at 1289.  The plaintiffs have not identified any common legal question applicable to the class, rather they assert an assortment of alleged constitutional violations.  No single policy, custom, procedure or alleged administrative deficiency unites the claims of the plaintiffs or the putative class members.  An inmate's suicide or suicide attempt does not by itself show deliberate indifference on the part of the Jail's staff and administrators, nor does the use of pepper spray or tasers necessarily show an Eighth Amendment violation.  Trial of the claims asserted on behalf of the class would require separate evaluation of all of the circumstances surrounding each incident, including the behavior exhibited by the prisoner, the knowledge of prison staff regarding the prisoner's condition, and the response of the Jail staff.   No single claim or legal issue could be resolved on a class basis.

The plaintiffs contend that "scope of prisoners' constitutional rights to mental health services is a legal question common to the entire class of Jail prisoners with serious mental health needs."  (Pls.' mot. for class certification at 7).  The plaintiffs' objective is to have this court prescribe Jail practices for the humane treatment of mentally ill prisoners, but that broad objective

does not satisfy the commonality requirement.  The plaintiffs' request for class-wide remedies does not mean there are legal questions common to the entire class.  The plaintiffs are seeking relief far wider than that necessary to redress the constitutional torts alleged.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims of the class."  The claims may arise from differing fact situations, but must be "based on the same legal or remedial theory."  *Adamson*, 855 F.2d at 676.  This standard "is closely related to the test for the common-question prerequisite in subdivision (a)(2)."  7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1764.

The plaintiffs fail to satisfy the typicality prerequisite for the same reasons that they fail to satisfy the commonality prerequisite.  The plaintiffs' claims and the claims of the putative class members arise under the Eighth Amendment, but their claims are not based on any single course of conduct, and there is no legal issue which, if resolved, would control the claims of the class.  The plaintiffs request seven categories of injunctive relief on behalf of the class, but such relief is requested on the basis of an assortment of claims.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  To satisfy this prerequisite, the plaintiffs must show that their interests are aligned with those of the persons they seek to represent and that they will vigorously prosecute the class through qualified counsel.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).  The plaintiffs are represented by qualified counsel associated with the American Civil Liberties Union of Colorado and the ACLU National Prison Project.  Plaintiffs and their counsel have vigorously pursued this case since it was commenced in 2002, and no conflicts

between plaintiffs or their counsel and other class members have been identified.  In this regard the plaintiffs have shown that they would be adequate class representatives, but they have failed to satisfy Rule 23(a)'s commonality and typicality requirements, and they have not adequately defined the class.

The plaintiffs have not met the threshold requirements of Rule 23(a).  For many of the same reasons, the plaintiffs fail to satisfy the requirement that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Significantly, for a class to be certified pursuant to Rule 23(b)(2), the opposing party's actions or inactions must be "generally applicable" to the class.

As discussed above, the plaintiffs do not complain of a written policy or standard procedure or practice to which all class members are subject.  The plaintiffs do not complain of lack of conduct that is premised on grounds applicable to the entire class.  Instead they contend that a number of separate incidents collectively show administrative deficiencies amounting to deliberate indifference.  The problem is that there are unique factual circumstances relevant to each incident alleged by the plaintiffs, and determination of whether the alleged incidents show a policy or custom of deliberate indifference would require separate assessment of each incident alleged by the plaintiffs as an example of such indifference.  Notably, the allegations with respect to the persons identified as Prisoners 1-14 arise from distinct acts.  The defendants' responses to those claims draw from each prisoner's Jail history and medical files.  The individual nature of the asserted claims and the individual nature of the defenses to those claims renders this action unmanageable as a class action.  "The vehicle of class litigation must ultimately satisfy practical as

-18-

well as purely legal considerations." *Shook v. El Paso County*, 386 F.3d 963, 973 (10th Cir. 2004).

The facts alleged in the complaints could support individual claims for relief, but those allegations do not show that final injunctive relief or declaratory relief with respect to the class as a whole is appropriate.  The plaintiffs request this court to enter an order addressing matters such as the propriety of using tasers and pepper spray to subdue mentally ill prisoners, the propriety of temporarily holding mentally ill prisoners in special detention cells, when and by whom mental health evaluations and treatment should be provided, the types of psychiatric medication that should be made available to prisoners, how such medication should be prescribed and administered, the numbers of mental health and custody staff that should be employed at the Jail, and the type of training that should provided to Jail employees.  Some of these matters, such as the use of pepper spray and tasers, cannot be addressed prospectively on a class-wide basis. Whether the use of such devices with particular prisoners comports with the Eighth Amendment must be evaluated on the basis of individual circumstances, and if a violation occurred, a remedy to address the harm suffered by the affected prisoner or prisoners can be fashioned.  The broad relief sought by the plaintiffs shows that they are not simply seeking to redress past constitutional torts and prevent there recurrence, rather they want this court to set standards for Jail practices with respect to mentally ill prisoners.  This court is not the appropriate decision maker to determine what constitutes "adequate" training for Jail staff, or what medications should be on the Jail's list of approved medications, or how many employees are needed for "sufficient" Jail staffing.  This court must respect its constitutional boundaries and refrain from usurping the role of prison administrators.

The plaintiffs argue that the Tenth Circuit's opinion in *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) shows that a Rule 23(b)(2) class action is an appropriate method for litigating disputes about the constitutionality of prison conditions. *Ramos v. Lamm* must be read within the context of its facts and subsequent developments in the law. *Ramos* depended upon a factual showing that the State of Colorado was operating a prison facility that was so outdated and poorly managed that all aspects of confinement there warranted condemnation as cruel and inhuman punishment, requiring an order that it be closed unless remedial measures were taken to bring it into conformity with court directed standards. Those standards were altered on appeal. There can be no doubt that the orders entered in that case are well beyond the limitations of the PLRA and no equivalent remedy could now be provided. Additionally, both the Tenth Circuit and the Supreme Court have subsequently more clearly identified what can be characterized as the deliberate indifference that gives rise to a claim of violation of the Eighth Amendment.

The PLRA did not add new elements to the class certification process, and the PLRA's limitations on broad prospective relief are not determinative of the class certification issue, but neither can those limitations be ignored. If this court does not have the authority to grant the injunctive relief requested, the purpose of proceeding as a class action is defeated. Rule 23(b)(2) necessarily presumes that the court has the power to grant "appropriate final injunctive relief or corresponding declaratory relief appropriate to the class as a whole." Thus, the definition of the class is the critical element in determining what relief is appropriate.

When subdivision (b)(2) was added to Rule 23, one of its purposes was to facilitate class action suits seeking the enforcement of civil rights, but that historical fact does not mean that every purported class action alleging constitutional violations is suitable for class adjudication.

-20-

Here the proposed class is vague, the claims of deliberate indifference arise from a variety of factual circumstances and legal theories, the plaintiffs' claims are based on conduct not generally applicable to the class, and class-wide injunctive relief is not appropriate.

Based on the foregoing, it is

ORDERED that the plaintiffs' motion for class certification is denied.

Dated: June 28, 2006

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge